UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MARY FIXL, individually and on          Case No.: 6:22-cv-901-RBD-LHP
behalf of all those similarly situated,

                Plaintiff,

vs.

RANDALL MECHANICAL, INC.,
d.b.a. "RANDALL" and
JEFFREY S. CONDELLO,

                Defendants.

_____/

## JOINT MOTION TO APPROVE SETTLEMENT AND INCORPORATED MEMORANDUM OF LAW

Class Representative, **MARY FIXL** ("Class Representative" or "Mrs. Fixl"), on behalf of herself and similarly-situated individuals (collectively, the "Settlement Collective" or "Plaintiffs"), and Defendants, **RANDALL MECHANICAL, INC., d.b.a. "RANDALL" and JEFFREY S. CONDELLO** (collectively "Defendants"), hereby move this Court for approval of the Parties' Settlement Agreement attached as Exhibit 1 ("Agreement")[1], resolving their dispute regarding all claims held by Plaintiffs for unpaid wages, liquidated damages, and attorneys' fees and costs under the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201–19 ("FLSA") against Defendants, and dismissing the case with prejudice.[2]  The Parties

---

[1] Any capitalized terms not defined herein have the meanings ascribed in the Agreement.
[2] As discussed fully herein, the Agreement releases the Defendants from all wage claims resulting from the practices complained of in the Lawsuit under the FLSA or any similar local or state law relating to Plaintiffs' employment with the Defendants.

respectfully request this Honorable Court to grant the Parties' Motion because the settlement is a fair, adequate, and reasonable resolution of the Parties' *bona fide* dispute.

## BACKGROUND

## I.    OVERVIEW OF CLAIMS AND PROCEDURAL HISTORY

### *The Lawsuit*

On May 13, 2022, Mrs. Fixl, on behalf of herself and similarly-situated employees, filed a collective action Complaint in the United States District Court for the Middle District of Florida alleging unpaid overtime wages under the FLSA ("the Lawsuit"). (Doc. 1).

Mrs. Fixl worked in the electrical and fire divisions while employed at Randall and processed payroll for other employees within her divisions. (Doc. 29-1; ¶¶4,7).  According to Mrs. Fixl, she and other employees in these divisions did not receive all compensation due to them under the FLSA.  (Doc. 1, ¶¶61-62).  The Lawsuit alleges, in relevant part, that the Defendants violated the FLSA in two ways.  First, by a practice of "time shaving", where her timesheet was edited so that it appeared that she worked less, and second, by "banking hours", where her unpaid overtime hours were used for paid time off. (Doc. 1, ¶¶25-27, 31-32) (the "Subject Practices").  In response, Defendants denied all liability to the claims alleged in the Lawsuit. (Doc. 12).

### *Collective Treatment Under 29 U.S.C. §216(b)*

Mrs. Fixl moved for conditional certification (Doc. 29) which was ultimately granted by the Court on May 1, 2023. (Doc. 44). The Court conditionally certified the 29 U.S.C. §216(b) collective action for all employees of Randall who: (1) worked in the electrical or fire divisions in the preceding three years; (2) were paid an hourly rate; and (3) worked more than forty hours in a workweek without being paid proper overtime compensation because of time shaving or banked hours practices. (Doc. 44). The Court approved consent forms to be delivered to a group of current and former employees of Defendants and allowed 90 days ("Opt-in Period") to return the executed forms declaring their consent to join this action. (Doc. 44). In total, since the inception of the case and through the close of the Opt-in Period, in addition to the Class Representative, 77 individuals joined this action.

After the close of the Opt-in Period and before the Pre-Trial Conference, Defendants moved to decertify the conditionally certified collective action. (Doc. 96). Plaintiffs opposed the motion and filed their response. (Doc. 98). The Parties then settled the matter (Doc. 104) before the Court had an opportunity to rule of the issue. However, in light of the Parties agreement, the Court denied the Defendants' motion to decertify without prejudice.[3] (Doc. 108)

---

[3] As detailed in Paragraph 1.10 of the Agreement, and more fully explained below, should the Court find it necessary to certify the collective action before approving the settlement, Defendants stipulate for settlement purposes only that the Settlement Collective are similarly situated to warrant final collective certification.

In sum, the Parties agree that nine (9) individuals do not meet the eligibility criteria to participate in the class and are not included in the Settlement Collective.[4]  Thus, the Settlement Collective totals sixty-nine (69) Plaintiffs made up of the Class Representative and sixty-eight (68) similarly situated party-plaintiffs; all of which are listed in **Schedule A** to the Agreement. *See* Exhibit 1.

### *Discovery and Analyzing Data*

Although the mediation was unsuccessful, the Parties engaged in substantial communications and negotiations about the claims and defenses at issue throughout the pendency of the case.  The Plaintiffs deposed eight (8) of Defendants' key witnesses, ranging from Mr. Condello (Randall's President and founder) down the line to its payroll processors.  An extensive amount of written discovery was also conducted.   Mrs. Fixl propounded interrogatories, requests for admissions, and requests for production.  Defendants produced several hundred emails and other data using targeted search terms related to the core issues in this case.   The Defendants produced hundreds of thousands Excel data points from payroll software and other records that were relevant to the core issues in the case.  Audit reports and other analysis of the timesheet data were compiled and examined by both Parties.  Plaintiffs retained a labor economist, Dr. Edward Wolpert Ph.D., to analyze and summarize the data points within the payroll and

---

[4] Payroll evidence demonstrated that nine (9) individuals did not perform any work within the FLSA's farthest reaching limitations' period of three (3) years.  All nine (9) individuals have been notified and were advised that the Parties will request that they be dismissed without prejudice from this case, bearing no fees or costs.

timekeeping software. Separately, Defendants directed their Payroll Director, Theresa Esteves, to manually examine each of the Plaintiffs' time and payroll records.

The foregoing records and the analysis from same allowed both Parties to create damage models that forced the other side to evaluate the true strengths and weaknesses of their respective factual and legal positions. These models were exchanged, evaluated, critiqued and refined as more discovery was conducted and more information was exchanged by the Parties. Ultimately, the Parties learned that all sides had significant risks and variability in potential outcomes at trial.

### *Final Settlement Negotiations*

Throughout the course of the litigation, the Parties narrowed down the contested issues for trial.  By the time the Pre-Trial Statement was filed, the typical disputes such as FLSA coverage, employment terms, hourly rates, weeks in the claim period, individual liability, willfulness for the three (3) year limitations period to apply, and a waiver of good faith defense for liquidated damages were all resolved.  (Doc. 97).  Although Defendants admitted to some timesheet edits and banked hours, what remained to be determined was how to quantify damages. (Doc. 97).   A disagreement centered over whether the timekeeping records were accurate so that all compensable time was captured in the records. (Docs. 60, 84). Plaintiffs claimed the records were inaccurate and they should be allowed, as a matter of law, to use reasonable estimates of damages at trial. (Doc. 60).  However, the Court denied Plaintiffs' motion and left the matter for determination based on

the facts developed at trial.  (Doc. 100)(Court stating that "if facts develop at trial calling the audit trail data into question [...] the Court might then consider instructing the jury on awarding damages by a just and reasonable inference.").

Ultimately, the Parties compromised on the last remaining issues. Defendants conducted a painstaking manual audit of each Plaintiffs' daily timesheets to ascertain a complete accounting of shaved time.  Following Defendants' audit, Plaintiffs crosschecked Defendants' calculations for accuracy using Dr. Wolpert's analysis which confirmed the veracity of Defendants' audit. The Parties were able to further itemize damages using the actual overtime rate for each member during their employment.  The Parties' Agreement guarantees that each member of the Settlement Collective will receive back the full amount owed for all timesheet edits reflected in the records.  Under the terms of the Agreement, each member of the Settlement Collective will receive the entire amount of overtime wages edited from their payroll records during the claim period regardless of the reason, multiplied by two (for liquidated damages) and the entire amount of regular rate or straight time wages edited from their payroll records.

Although the Defendants' audits pertaining to timesheet edits are accurate, the Parties still significantly disagreed as to whether audit trails reflecting timesheet edits capture the full spectrum of damages.  (See Docs. 60, 84, 88, 96, 97, and 99).  Therefore, the Parties compromised their respective positions.  Thus, in addition to recouping the timesheet edits, each member of the Settlement Collective will also receive one (1) additional hour of overtime for each week in the

claim period where they worked at least 40 hours (plus an equal sum of liquidated damages). Again, the Parties were able to further itemize damages and base this component of the formula using the actual weeks worked during each member's employment.

## II.    SUMMARY OF THE SETTLEMENT TERMS

In exchange for a full and final release from claims for unpaid wages under the FLSA and similar local or state laws relating to their employment with the Defendants, Defendants have agreed to pay a total settlement amount of $550,000.00 ("Gross Settlement Amount") to the Settlement Collective and to Plaintiffs' attorneys. *See* Exhibit 1. The settlement payments will be made in 4 monthly installments: (1) $134,004.15 (gross amount of wages); (2) $134,004.15 (gross amount of liquidated damages); (3) $140,995.85 (first fees/costs to Class Counsel); and (4) $140,995.85 (final fees/costs to Class Counsel). *See* Exhibit 1, Schedule A.

### *The Formula*

The Parties have agreed that the settlement payment to each Plaintiff will be based upon (1) the entire amount of overtime wages shaved from their payroll records during the claim period regardless of the reason, multiplied by two (for liquidated damages); (2) the entire amount of regular rate or straight time wages shaved from their payroll records; and (3) an additional sum equal to one hour of overtime wages multiplied by the total number of 40-hour workweeks each member worked in the claim period, multiplied by two (for liquidated damages).

The individual calculations were based upon an analysis of individual time records, payroll records, audit trail analysis, summaries, interrogatories, testimony, paper records, and representations from the Plaintiffs.

Under the proposed Settlement, each member of the Settlement Collective will receive a payment that takes into account the following factors to ensure that the compromise is fair as to each and every individual: (1) each member's actual hourly and overtime rate of pay during their employment during the class period; (2) the actual amount of time edited during the class period; and (3) the number of weeks worked during the class period.   Additionally, the Settlement Collective will receive all time deducted under the Subject Practices regardless of whether it occurred in weeks where a full forty hours was worked.   Thus, sufficient consideration is provided for the scope of the release.

### *Payment to Plaintiffs and Attorneys' Fees and Costs*

Under the settlement, each Plaintiff will receive back-pay wages properly taxed with deductions for any additional applicable taxes or withholdings. Corresponding IRS W-2 Forms will be issued for such payments.  Defendants shall separately pay the employer's share of any payroll taxes and remit these along with the amounts withheld from Plaintiffs' back-pay wages to the IRS.  The Plaintiff will also receive an equal sum of liquidated damages, and corresponding IRS 1099 Forms will be issued for such payments.  Defendants shall not withhold anything from this portion of the Settlement Payment.

The Parties also separately negotiated fair and reasonable attorneys' fees based on the amount of time expended and the complexity of the litigation. Counsel for Plaintiffs will be paid $262,737.00 in attorney fees based on hours expended and $19,255.00 in litigation costs. The Parties separately negotiated the fees and costs after the amounts to the Plaintiffs were agreed upon. Furthermore, the fees and costs do not impact and were negotiated without regard to the amounts paid to Plaintiffs. The Parties agree that the attorneys' fees and expenses are a fair and reasonable amount and were necessary for the prosecution of this action. Defendants do not oppose Class Counsel's recovery of these fees or expenses and do not object to the reasonableness of Plaintiffs' fees and expenses or that they were fair, reasonable, and necessary for the prosecution of this action. An IRS 1099 Form for the attorneys' fees and costs payment shall be issued *only* to Class Counsel.

## **ARGUMENT**

Given the *bona fide* factual and legal disputes that exist in the subject matter, the settlement provides a fair and reasonable compromise. Simply put, the settlement accounts for both the representations of the Settlement Collective and the verified data in Defendants' records. It affords class-wide relief to the Settlement Collective without prioritizing a single theory or a subset of the collective.

In addition, the settlement provides compensation for *all weeks* worked during the claim period at the applicable overtime rates for each member.

Additionally, compensation will be provided for the weeks where overtime was not worked but records show time was shaved that should have otherwise been paid at a straight-time rate under state or local law. Thus, the settlement resolves unpaid wages for *all* hours owed because of the Subject Practices. Without admitting or conceding any liability or responsibility for damages, Defendants have agreed to settle the Lawsuit on the terms and conditions set forth in the proposed settlement to avoid the burden, expense, inconvenience, and uncertainty of continuing litigation.

## I.    Standard for Approval of FLSA Collective Actions

When parties settle or compromise claims for back wages under the FLSA, they must seek court approval for the proposed settlement. *Dyer v. M&M Asphalt Maintenance Inc.*, Case 6:15-cv-00959-RBD-KRS, Doc. 223 (M.D. Fla. May 12, 2017) (*citing Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352 (11th Cir. 1982)).   A federal trial court "may enter a stipulated judgment after scrutinizing the settlement for fairness." *Id.* (citing *Lynn's Food Stores*, 679 F.2d at 1353.) The relevant inquiry is whether the proposed settlement "constitutes a fair and reasonable compromise of a *bona fide* FLSA dispute." *Crabtree v. Volkert, Inc.*, No. 11-0529-WS-B, 2013 WL 593500, 2013 U.S. Dist. LEXIS at *3 (S.D. Ala. Feb. 14, 2013).

When determining whether to approve a FLSA settlement between private parties, those federal courts "should be mindful of the strong presumption in favor of finding a settlement fair." *Id. (quoting Bennett v. D.L.S. Marketing, LLC, 2009*

*WL 1309758*, *2 (M.D. Fla. May 7, 2009)).  Where "the parties are represented by
competent counsel in an adversary context, the settlement they reach will, almost
by definition, be reasonable." *Id.* (*quoting Bonetti v. Embarq Mgmt. Co.*, 715 F.
Supp. 2d 1222, 1227 (M.D. Fla. 2009)) (quotation marks omitted); *see also Norris
v. Lake Conway Landscaping of Orlando, Inc.*, Case No.: 14-cv-1512-ORL-37KRS,
2015 WL 3632314 (M.D. Fla. June 10, 2015).

### A.    Preliminary Issues

### *Notice to Settlement Collective*

The Consent forms executed by each member of the Settlement Collective
vests the Class Representative with the authority to enter into this Agreement on
behalf of the other members. Nevertheless, Courts sometimes conduct fairness
hearings to provide an opportunity for opt-in plaintiffs to object.  *See Goldsby v.
Renosol Seating, LLC.*, 2013WL6535253, at *9-10 (N.D. Ala. Dec. 13, 2013).
However, this Court has found that fairness hearings are not necessary "where the
opt-in plaintiffs have been provided an opportunity to object." *Dyer v. M&M
Asphalt Maint. Inc.,* 615CV1512ORL37KRS, (Doc. 225)(M.D. Fla. May 26,
2017)(collecting cases).   In *Dyer*, this Court found Class Counsel's sworn
statements that he advised the class members of the essential terms of the
settlement verbally or in writing and that he received no objections to the
settlement were sufficient to satisfy any notice concerns.  *Id.*

Similar to *Dyer*, in the subject case, each member of the Settlement
Collective was contacted individually, and the terms of the Agreement were

explained in detail by Class Counsel. *See* Exhibit 2. As asserted in his declaration, Class Counsel explained the terms of the Agreement to each member verbally or sent written correspondence, or both. *Id.* Class Counsel has received no objections from any person regarding any terms of the Agreement. *Id.*

### Ruling on Final Certification of Collective Action

The Parties settled the case before the Court ruled on Defendants' Motion to Decertify, thus the Court denied the motion without prejudice. (Doc. 108). However, this scenario is no impediment to approving the settlement because the majority of Courts in the Middle District do not require a ruling on final certification to approve an FLSA settlement. *Huff v. Bobcat N. Am., LLC,* 619CV861ORL37DCI, 2021 WL 268356, at *2 (M.D. Fla. Jan. 25, 2021) (collecting cases), report and recommendation adopted, 619CV861ORL37DCI, 2021 WL 268355 (M.D. Fla. Jan. 27, 2021) (J. Dalton); *but see Ruddell v. Manfre*, 2015 WL 7252947, at *1-3 (M.D. Fla. Nov. 17, 2015) (deeming consideration of final certification necessary). Regardless, should the Court find a substantive ruling necessary at this stage, Defendants stipulate to final certification of the collective action for the purposes of settlement only. Exhibit 1, Agreement at Paragraph 1.10.

### B.    A *Bona Fide* Dispute Exists Over Liability and Damages

A *bona fide* dispute exists in this case. Defendants have vigorously opposed the allegations in this case through a motion to decertify the collective action and oppositions to Plaintiffs' partial summary judgement motion. Defendants asserted,

and continue to assert, that Defendants had adequate records under 29 U.S.C. 211(c) and would present significant evidentiary hurdles to Plaintiffs' claims that a reasonable and just inference standard should be applied at trial.  Defendants also intended to argue against collective treatment to the Court and that any pattern or practice to their conduct was coincidental. In fact, it is undisputed that Defendants paid overtime pay to Plaintiffs.  Defendants deny that they knew or should have known that any Plaintiff worked before or after the mandated shifts and that any time off the clock or edited was likely due to their own non-work. *See, e.g., White v. Baptist Memorial Health Care Corp.,* 699 F. 3d 869 (6th Cir. 2012), *cert. denied*, 134 S.Ct. 296 (2013).  Moreover, there is dispute about whether the alleged unpaid hours would be overtime hours and the amount, if any, of such overtime hours. *See Buntin v. Square Foot Mgmt. Co., LLC*, 6:14-CV-1394-ORL-37, 2015 WL 3407866, at *2 (M.D. Fla. May 27, 2015).  In *Buntin*, this Honorable Court found that representations regarding the dispute over hours actually worked and risks of protracted litigation were "sufficient information for the Court to determine that the compromise pertained to a bona fide dispute over FLSA provisions." *Id.* (*citing Lynn's Food*, 679 F.2d at 1355).

The Parties both agree that there is substantial risk for both sides. The total settlement amount reflects a reasonable compromise of the Plaintiffs' damages and confers substantial benefits to the Plaintiffs. Although the Parties believe in the merits of their respective claims and defenses, given the time and expense associated with continued litigation, the Parties agree that a compromise is

appropriate. They desire to resolve this case by way of a negotiated settlement payment by Defendants to avoid the time and expense inherent in continued litigation and the possibility of scores of individual trials. *See Lynn's Food Stores*, 679 F.2d at 1354 ("Thus, when the parties [to the litigation] submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching.").

### C.    The Proposed Settlement is Fair and Reasonable.

Courts consider several factors before approving a settlement as fair, reasonable, and adequate under the FLSA, including: the risk of fraud or collusion; the complexity, expense, and likely duration of the litigation; the amount of discovery completed; the likelihood of success on the merits, range of possible recovery; and opinions of counsel. *See Leverso v. SouthTrust Bank of Ala., Nat'l Assoc.,* 18 F.3d 1527, 1531 n.6 (11th Cir. 1994).

### 1.    No Evidence of Fraud or Collusion.

As discussed above, the Parties reached the Agreement several weeks before trial after completing a full litigation track that included: (1) motion disputes over certification, individual liability, and adequacy of the records; (2) extensive discovery; and (3) months-long negotiations that were predicated upon detailed and specific modeling and analysis. The Parties' dispute was and is *bona fide*. This Court has recently found a *bona fide* dispute under similar circumstances. *Huff v. Bobcat N. Am., LLC,* 619CV861ORL37DCI, 2021 WL 268356, at *4 (M.D. Fla. Jan.

25, 2021), report and recommendation adopted, 619CV861ORL37DCI, 2021 WL 268355 (M.D. Fla. Jan. 27, 2021)(time clock rounding case approved where parties compromised on damages by forensically analyzing timekeeping and other records). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Simmons v. Mathis Tire & Auto Serv.*, No. 13-2875-STA-tmp, 2015 WL 5008220, 2015 U.S. Dist. LEXIS 114008, at \*2 (W.D. Tenn. Aug. 20, 2015) (citing *Lynn's Food Stores*, 679 F.2d at 1353–54)). There is no risk of fraud or collusion where adversarial parties strongly contest the underlying issues. *Id.* The Parties are represented by counsel experienced in wage-and-hour law, exchanged meaningful damage calculations and assumptions, and analyzed the available data. The Parties were only able to settle this action just prior to trial and after engaging in extensive discovery, motion practice, unsuccessful mediation, and other activities highlighting the adversarial nature of the litigation.

### 2. Complexity, Expense, and Likely Duration of the Litigation Support Settlement.

If the Parties were unable to settle, the trial would have been long and costly. Using representative testimony, Plaintiffs estimated two (2) weeks for trial. The Defendants objected to representative testimony and so they estimated four (4) weeks for trial. Furthermore, if the Court decertified the matter and ordered scores of individual trials, the continued litigation would have been very long, complex, and expensive. Costly trial preparation was not fully completed. Absent settlement,

Defendants would have required weeks of extensive briefing and fully intended to contest this matter through trial(s).   Settling at this stage benefits the Parties.

### 3. Discovery Conducted Supports the Settlement Terms.

As discussed above, significant discovery was conducted prior to settlement. Defendants produced documents and electronically stored information ("ESI") responsive to requests propounded by Plaintiffs. The Defendants answered interrogatories and produced hundreds of thousands of data points and pages of time clock records, payroll records, audit trails, and other documents.   Using all available data and relevant documents, Defendants and Plaintiffs calculated and exchanged extensive damage models, together with detailed explanations of how they made such calculations, and the precise theories on which their claims rested. Both sides reviewed, analyzed, and discussed those models, in order to ascertain the risks of this litigation. The Defendants went as far as to produce "Audit Trail Analysis" for each member of the Settlement Collective. These are manual examinations of the timekeeping records itemizing the total amount of time deductions for each member of the Settlement Collective.  Plaintiffs then analyzed Defendants' "Audit Trail Analysis" to crosscheck the calculations. Those discussions produced some areas of agreement, while highlighting the fact that this case had enough risk and uncertainty for both sides that would support a fair and equitable compromise solution.

### 4.    Litigation Risks Weigh in Favor of Settlement.

The Parties feel they have strong positions and that they will ultimately disprove the other's position. The Parties recognize, however, that continued litigation, by its very nature, presents certain risks and significant expenses for the Parties.  As one Court recognized:

> What the parties have reached, then, is a classic compromise. Plaintiffs accepted less money in settlement than they would have received if they had prevailed on all matters at trial, in exchange for the certainty of receiving payment now without the burden of litigating [defendant's] multiple colorable defenses that, if successful, could have reduced or even negated plaintiffs' recovery.

*Warren v. Cook Sales, Inc.,* No. 15-0603-WS-M, 2017 WL 325829, at *16 (S.D. Ala. Jan. 23, 2017).

Plaintiffs understand that they face a risk of losing a significant portion of their claimed damages should this case survive decertification and proceed to trial. Plaintiffs' best-case scenarios are based upon their own personal estimates of time lost to the Subject Practices.  But there is a significant amount of data that supports a much lower damages figure when relying only on the records. *Crabtree*, 2013 WL 593500, 2013 U.S. Dist. LEXIS, at *10–11 ("[G]iven the substantial legal and factual obstacles at trial, the substantial uncertainty of plaintiffs prevailing on their FLSA claims, and the considerable delay that plaintiffs would have likely experienced in receiving payment even if they did prevail at trial, settlement of such causes of action in the agreed-upon amounts appears entirely reasonable."). In sum, the Settlement Collective agreed to accept a compromised settlement that includes back wages, consisting of all shaved time and one hour of reasonably

estimated time for weeks worked in claim the period, plus an equal sum of liquidated damages for a full three years.

Defendants likewise faced significant litigation risks and expenses. To complete the four (4) week trial as Defendants intended would result in the expenditure of significant attorneys' fees as well as litigation costs for court reporters, travel, ESI vendors and the like. Furthermore, if Plaintiffs succeeded at trial, Defendants faced a potential increased exposure, not only from damages, but also the increased attorneys' fees. Defendants also considered the costs of continued litigation to their business operations. The law of scarcity dictates that the time Defendants and their employees devote to defending this litigation would come at some cost to their business. Defendants prefer to resolve the dispute so that they can focus, without distraction, on running their business. Both Parties faced litigation risks on key issues in this case and Defendants faced the reality that protracted litigation could be harmful to their business.

### 5.      Range of Possible Recovery Supports the Settlement.

The individual settlement amounts that each Plaintiff will receive fall within the possible range of recovery. Most of the Settlement Collective did not complete interrogatories either from the Court or from Defendants. However, the ones that did, like Mrs. Fixl, are receiving less than their "reasonable and just inferences" estimates of damages. Thus, this is a compromised settlement. However, while their initial estimates were based on best recollections and some payroll records,

the later negotiations were conducted by using ESI, including timekeeping
software showing clock-in times and when those times were edited. In other
words, the extrinsic data confirmed that recollections of shaved timesheets were
accurate, but the lost wages may have been overestimated. The Agreement
represents a reasonable compromise since the Settlement Collective will receive
100% of the time indisputably shaved plus an additional hour back per week
worked to compensate for missing time not captured by the edits.

### 6.    Opinions of Counsel.

Counsel for the Parties are experienced in FLSA cases. It is the opinion of
Counsel as reflected in this Motion, that this settlement reflects a reasonable
compromise and guarantees an outcome that provides a benefit to all Parties. The
resolution of this litigation will, among other things: (1) provide back pay and
liquidated damages to the Plaintiffs for a full three-year period; (2) ensure
certainty for all concerned without additional delay; and (3) obviate the need for
additional litigation. The Agreement simultaneously benefits the Parties and
serves the public interest by ensuring compensation to the Settlement Collective
with efficiency. *See Edwards v. City of Mansfield*, No. 1:15-CV-959, 2016 U.S.
Dist. LEXIS 64159, at *10 (N.D. Ohio May 16, 2016) ("[A]pproval of a fair and
reasonable agreement promotes the public's interest in encouraging settlement of
litigation.").

### 7.    Miscellaneous Factors.

Additionally, because a plaintiff may only compromise FLSA claims on the basis of a "dispute over FLSA provisions," certain concessions, such as pervasive general releases are scrutinized for their impact on a settlement's fairness, especially when they appear gratuitous or to be the result of overreaching by an employer. *See Bright v. Mental Health Res. Ctr., Inc.,* No. 3:10–cv–427–37TEM, 2012 WL 868804, (M.D. Fla. Mar. 14, 2012) 2012)("Employers cannot use the settlement of FLSA claims to extract a general release of claims before paying over the wages").  The FLSA Settlement Agreement does not contain a pervasive general release, though it does release related wage claims resulting from the practices complained of in the Lawsuit including those arising under the FLSA and similar local or state law.  As discussed, this is because the Parties included in the settlement *all weeks* worked by each Plaintiff within the claim period that were affected by the Subject Practices- even weeks that the payroll did not reflect a full forty (40) hour work week.  The Parties were able to use the "Audit Trail Analysis" to identify those weeks that a straight time calculation would be warranted. The Agreement provides that the Plaintiffs will receive wages for those weeks too. Therefore, the Plaintiffs are releasing wage claims related to these Subject Practices.

Courts in the Middle District have found that a release in an FLSA settlement is generally reasonable so long as it is tailored to wage claims asserted in the complaint. *Monahan v. Rehoboth Hosp., Inc.,* No. 6:15-cv-1159-Orl-40KRS, 2015

WL 9258244, at *2 (M.D. Fla. Dec. 18, 2015). This is because "[u]nlike broad general releases, an employee likely already knows—whether through her own knowledge or through the aid of her counsel— the value of her wage claims and the potential legal actions she can take to vindicate her rights." *Id.*

Indeed, similar narrow release language such as this has been adopted by this Court as fair and reasonable. *Huff v. Bobcat N. Am., LLC*, 619CV861ORL37DCI, 2021 WL 268356, at *4 (M.D. Fla. Jan. 25, 2021)(Judge Irick finding similar release language appropriate when straight time wages were included in a settlement of an FLSA overtime case), report and recommendation adopted, 619CV861ORL37DCI, 2021 WL 268355 (M.D. Fla. Jan. 27, 2021)(J. Dalton); *Plazas v. Dr. Phillips Ctr. for Performing Arts, Inc.,* 6-18-CV-392-Orl-37TBS, 2018 WL 3432739, at *3 (M.D. Fla. June 29, 2018)(Judge Smith found fair a release for all unpaid wage claims under FLSA "or any similar state or local law"), *report and recommendation adopted*, 2018 WL 3428155 (M.D. Fla. July 16, 2018)(Dalton, J.); *See also Daniels v. Sharyanah, Inc.,* 6:17-CV-365-Orl-40DCI, 2017 WL 2805716, at *2 (M.D. Fla. June 9, 2017)(Judge Irick found that a release for claims "arising out of or related to the payment of wages during employment" was sufficiently limited), *report and recommendation adopted*, 2017 WL 2800224 (M.D. Fla. June 28, 2017) (Byron, J.).

## D.   The FLSA Supports the Negotiated Fees and Costs in the Proposed Settlement.

The FLSA provides "[t]hat the court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to

be paid by the Defendants, and costs of the action." 29 U.S.C. § 216(b). Counsel for Parties stipulate that the amount negotiated as attorneys' fees and costs is fair and reasonable, and that Plaintiffs accept this amount in full satisfaction of the attorneys' fees and costs incurred.

The Parties agreed to the Plaintiffs' attorneys' fees and costs separately and without consideration to the amount paid to the Plaintiffs. Where the parties negotiate attorney's fees separately from the amount of the FLSA settlement itself, the court need not undertake a lodestar review of the attorney's fees for reasonableness. *Bonetti*, 715 F. Supp. 2d at 1228. This Honorable Court applies *Bonetti* and has stated that the fairness and reasonableness of attorneys' fees is established when the Parties separately negotiate the claim for attorneys' fees and nothing in the record indicates that the Plaintiff's recovery would be adversely affected by the amount paid to counsel. *Buntin,* 2015 WL 3407866 *4. Here, the Plaintiffs' damages were calculated using the formulas discussed, and the fees were separately negotiated based on time expended- which the Parties agree was necessary for the prosecution of this action.

## <u>CONCLUSION</u>

The Parties' proposed settlement represents an arm's-length negotiation by competent counsel. It provides relief to Plaintiffs and eliminates the inherent risks both sides would bear if this litigation were to continue. For the foregoing reasons, the Parties respectfully request that this Court enter an order:

1.    Granting the Joint Motion;

2.     Approving the FLSA Settlement Agreement and the attorneys' fees and costs;

3.     Dismissing this case with prejudice with respect to the Settlement Collective;

4.     Dismissing the following individuals without prejudice:

     a.  James Allen
     b.  Dariel Davila
     c.  Brandon Eavey
     d.  Tammy Fisk
     e.  Douglas Irwin
     f.  Frank Pasta
     g.  Luis Perez Rentas
     h.  Darryl Tompkins
     i.  Hector Torres

5.     Finding that each party shall be responsible for their own attorneys' fees and costs, except as stated in the Agreement; and

6.     Retaining jurisdiction over the Parties to the Agreement for the purposes of interpretation, compliance, and enforcement of the Agreement.

Dated: November 27, 2023.

Respectfully submitted,

**LABAR & ADAMS, P.A.**

By: */s/ Ryan LaBar, Esq.*
N. Ryan LaBar, Esq.
Florida Bar No.: 10535
Email: rlabar@labaradams.com
Scott C. Adams, Esq.
Email: sadams@labaradams.com
2300 East Concord Street
Orlando, Florida 32803
Phone: 407.835.8968
*Attorneys for Plaintiffs*

**CRISTAL LAW GROUP**

By: */s/ Ben Cristal, Esq.*
Ben Cristal, Esq.
Florida Bar No.: 84761
P.O. Box 16680
Clearwater, FL 33766
813-258-8500 phone
813-258-8501 facsimile
E-mail: mail@cristallawgroup.com
Attorney for the Defendants