# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

MARY FIXL,

      Plaintiff,

v.                            Case No:   6:22-cv-901-RBD-LHP

RANDALL MECHANICAL, INC. and
JEFFREY S. CONDELLO,

      Defendants

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

This cause came on for consideration without oral argument on the following

motion filed herein:

| | |
|---|---|
| **MOTION:** | **JOINT MOTION TO APPROVE SETTLEMENT AND INCORPORATED MEMORANDUM OF LAW (Doc. No. 111)** |
| **FILED:** | **November 27, 2023** |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED in part and DENIED in part**.

## I.     BACKGROUND.

On May 13, 2022, Plaintiff Mary Fixl, individually and on behalf of those similarly situated, filed a complaint against Defendants Randall Mechanical, Inc. ("Randall") and Jeffrey S. Condello, alleging failure to pay overtime compensation in violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA").   Doc. No. 1.   In sum, Plaintiff alleges that Defendants violated the FLSA in two ways: first, by a practice of "time shaving," where her timesheet was edited so that it appeared that she worked less, and second, by "banking hours," where her unpaid overtime hours were used for paid time off.   *Id.*

Defendants answered the complaint.   Doc. No. 12.   On Plaintiff's motion, which was deemed unopposed, the Court conditionally certified this matter as a collective action pursuant to 29 U.S.C. § 216(b), appointed Plaintiff as class representative, appointed Plaintiff's counsel as class counsel, and approved the notice procedure to the proposed collective.   Doc. No. 44.   *See also* Doc. Nos. 29, 31, 35.   The collective is defined as:

> All Employees of Randall who: (1) worked in the electrical or fire divisions during the preceding three years; (2) were paid an hourly rate; and (3) worked more than forty hours in a workweek without being paid proper overtime compensation as a result of the time shaving or banked hours practices.

Doc. No. 44, at 5.   Since inception of this case, and in addition to the named Plaintiff, seventy-seven (77) persons have opted in as plaintiffs.   *See* Doc. Nos. 15, 17–19, 37–43, 45–46, 50, 53–54, 59, 62–67, 69–73, 77, 81–83, 85–87, 89.

On September 28, 2023, Defendants filed a motion to decertify the collective. Doc. No. 96.   However, prior to the Court's resolution of that motion, the parties settled the case.   Doc. No. 104.   Accordingly, the Court denied without prejudice as moot the motion to decertify and ordered the parties to file a motion for settlement approval pursuant to *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982).   Doc. Nos. 106, 108.

Now before the Court is the parties' Joint Motion to Approve Settlement, filed on November 27, 2023.   Doc. No. 111.   With the motion, the parties have included a copy of their Settlement Agreement, which includes Schedule A documenting the amounts to be paid under the Settlement Agreement to each qualifying member of the collective who has opted in (Doc. No. 111-1), the Declaration of N. Ryan Labar, Esq., class counsel (Doc. No. 111-2, at 2–5), and copies of letters sent to each of the opt-ins by class counsel regarding the terms of the settlement (Doc. No. 111-2, at 7–143).   The Settlement Agreement provides that Defendants will pay a total settlement amount of $550,000.00, to be paid in four separate monthly installments: (1) $134,004.15 in total unpaid wages; (2) $134,004.15 in liquidated damages; (3) $140,995.85 to account for half of the amount of attorneys' fees; and (4) $140,995.85

to account for the second half of the attorneys' fees.   Doc. No. 111-1 ¶¶ 3.1, 4.2; *see also id.* at 15–16.

The parties ask that the Court approve their Settlement Agreement and dismiss this action with prejudice with regard to the settlement collective, dismiss this matter without prejudice as to those opt-ins who the parties have determined do not meet the eligibility criteria to participate in the collective, find that each party shall bear their own fees and costs, except as set forth in the Settlement Agreement, and retain jurisdiction "for the purposes of interpretation, compliance, and enforcement of the Agreement."   Doc. No. 111, at 1, 22–23.   The matter was referred to the undersigned for issuance of a Report and Recommendation, and it is ripe for review.

## II.    APPLICABLE LAW.

In *Lynn's Food*, the Eleventh Circuit explained that claims for compensation under the FLSA may only be settled or compromised when the Department of Labor supervises the payment of back wages or when the district court enters a stipulated judgment "after scrutinizing the settlement for fairness."   679 F.2d at 1353.   A court may only enter an order approving a settlement if it finds that the settlement "is a fair and reasonable resolution of a bona fide dispute," of the plaintiff's FLSA claims.   *Id.* at 1353–55.   In doing so, the Court should consider the following nonexclusive factors:

- The existence of collusion behind the settlement.
- The complexity, expense, and likely duration of the litigation.
- The state of the proceedings and the amount of discovery completed.
- The probability of plaintiff's success on the merits.
- The range of possible recovery.
- The opinions of counsel.

*See Leverso v. SouthTrust Bank of Ala., Nat'l Assoc.*, 18 F.3d 1527, 1531 n.6 (11th Cir. 1994).   The Court may approve the settlement if it reflects a reasonable compromise of the FLSA claims that are actually in dispute.   *See Lynn's Food Stores*, 679 F.2d at 1354.   There is a strong presumption in favor of settlement.   *See Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977).[1]

When a settlement agreement includes an amount for attorney's fees and costs, the "FLSA requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement."   *Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir. 2009) (per curiam).[2] The parties may demonstrate the reasonableness of the attorney fees by either: (1) demonstrating the reasonableness of the proposed attorney fees using the lodestar method; or (2) representing that the parties agreed to plaintiff's attorney fees

---

[1] The Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.   *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

[2] Unpublished decisions of the Eleventh Circuit are cited as persuasive authority. *See* 11th Cir. R. 36–2.

separately and without regard to the amount paid to settle the plaintiff's FLSA claim.   *See Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009).

**III.   ANALYSIS.**

   *A.   Final Certification.*

As an initial matter, the parties do not request final certification of the collective prior to approval of their Settlement Agreement.   Doc. No. 111, at 3 n.3. However, should the Court find final certification necessary, Defendants stipulate for settlement purposes only that the settlement collective are similarly situated to warrant final collective certification.   *Id.*; *see also* Doc. No. 111-1 ¶ 1.10 ("The Defendants . . . stipulate to the entry of a final certification of the collective action should the Court find it necessary to do so prior to granting" the parties' joint motion).

Upon review, authority in this District suggests that final collective certification is not necessary for approval of the settlement.   *See, e.g., Huff v. Bobcat N. Am., LLC*, No. 6:19-cv-861-Orl-37DCI, 2021 WL 268356, at *2 (M.D. Fla. Jan. 25, 2021), *report and recommendation adopted*, 2021 WL 268355 (M.D. Fla. Jan. 27, 2021) (collecting cases for proposition that "[i]t appears that the majority of approvals in other FLSA collective action settlements in the Middle District of Florida did not require such action."); *Mcguire v. Intelident Sols., LLC*, No. 8:18-cv-02995-T-23SPF, 2020 WL 10506642, at *3 (M.D. Fla. Sept. 2, 2020), *report and recommendation adopted*,

2020 WL 10506644 (M.D. Fla. Sept. 28, 2020) ("A final certification decision is not required.   In deciding whether a settlement is fair and reasonable, no binding precedent requires different treatment of an FLSA collective action and an FLSA individual action."); *Campbell v. Pincher's Beach Bar Grill Inc.*, No. 2:15-cv-695-FtM-99MRM, 2017 WL 3700629, at *2 (M.D. Fla. Aug. 24, 2017), *report and recommendation adopted*, 2017 WL 3668889 (M.D. Fla. Aug. 25, 2017) ("On balance, the Court finds persuasive the authorities cited by the parties in which jurists on this Court approved a settlement at the conditional certification stage without requiring a final certification prior to approving a settlement.").

The undersigned agrees with this persuasive authority, particularly given that Defendants agreed to withdraw their request for decertification for settlement purposes.   Doc. No. 111-1 ¶ 1.10.   Accordingly, the undersigned will respectfully recommend that the request for approval of settlement proceed while the case is in the conditional certification stage.

B.    *The Collective.*

As discussed above, seventy-seven (77) persons have opted in as plaintiffs. *See* Doc. Nos. 15, 17–19, 37–43, 45–46, 50, 53–54, 59, 62–67, 69–73, 77, 81–83, 85–87, 89.   However, according to the joint motion, the parties agree that nine (9) individuals do not meet the eligibility criteria to participate in the class, and thus are not included in the settlement.   Doc. No. 111, at 4.   According to the

declaration of Attorney LaBar, those nine (9) persons are James Allen, Dariel Davila, Brandon Eavey, Tammy Fisk, Douglas Irwin, Frank Pasta, Luis Perez Rentas, Darryl Tompkins, and Hector Torres, and they were excluded because their claims were outside of the limitations period.  Doc. No. 111-2, at 4, ¶ 8.  Attorney LaBar personally contacted each of these persons to explain the same, and that the parties would request dismissal of the claims of these nine (9) individuals without prejudice.  *Id.*  Attorney LaBar avers that he received no objections to the disposition of these nine (9) claims.  *Id.*

Thus, sixty-nine (69) Plaintiffs remain part of the collective Settlement Agreement.  Doc. No. 111, at 4.  *See* Doc. No. 111-1, at 15–16; Doc. No. 111-2 ¶ 9.

C.    *Whether Plaintiffs Have Compromised Their Claims.*

The parties explain that a central dispute in this matter was whether Defendants' timekeeping records were accurate such that all compensable time was captured in the records.  Doc. No. 111, at 5.  Defendants conducted a manual audit of Plaintiffs' daily timesheets, which Plaintiffs crosschecked.  *Id.* at 6.  The Settlement Agreement "guarantees that each member of the Settlement Collective will receive back the full amount owed for all timesheet edits reflected in the records, and "each member of the Settlement Collective will receive the entire amount of overtime wages edited from their payroll records during the claim period."  *Id.*  However, the parties still disagree whether this captures the full

spectrum of damages.  *Id.*  So, the parties agree that Plaintiffs have compromised their claims.  *Id.*  It is also clear from Plaintiffs' answers to the Court's interrogatories that they will receive less under the Settlement Agreement than they initially claim to have been owed.  *Compare, e.g.*, Doc. Nos. 16-1, 23-1, 24-1, 47-1, 48-1, 49-1, 51-1, 52-1, 57-1, *and* 61-1, *with* Doc. No. 111, at 15–16.

Thus, Plaintiffs have compromised their claims within the meaning of *Lynn's Food*.  *See Bonetti*, 715 F. Supp. 2d at 1226 ("Broadly construed, a compromise would entail any settlement where the plaintiff receives less than his initial demand.").

D.    *Reasonableness of the Settlement Amount.*

Because Plaintiffs have compromised their claims, the Court must determine whether the settlement amount they agreed to accept is reasonable.  Here, the Settlement Agreement provides that Plaintiffs will receive a collective total of $134,004.15 in unpaid wages and an equal amount of liquidated damages, with each individual Plaintiff recovering anywhere from $38.50 to $16,518.75.  Doc. No. 111-1 ¶¶ 3.1, 4.2; Doc. No. 111-1, at 15–16.  In their joint motion, the parties explain that they engaged in an extensive amount of discovery in this case, as well as substantial communications and negotiations about the claims and defenses at issue.  Doc. No. 111, at 4.  The parties agree that both sides had significant risks and variability in potential outcomes at trial – centrally as it relates to the quantification of damages

– with Plaintiffs claiming that Defendants' timekeeping records were inaccurate. *Id.* at 5.   Ultimately, the parties compromised on this issue, with Defendants conducting a manual audit of Plaintiffs' daily timesheets to ascertain a complete accounting of shaved time, with Plaintiffs crosschecking those calculations.   *Id.* at 6.   The parties itemized damages using the actual overtime rate for each settlement collective member during their employment, and their agreement guarantees that each collective member will receive the full amount owed as reflected in Defendants' records, and an equal amount of liquidated damages.   *Id.* at 6–8. However, the parties still disagree as to whether the audit trails reflecting the edits capture the full spectrum of damages, so, in addition to recouping the amount reflected from the audit, each settlement collective member will also receive one additional hour of overtime for each week in which he/she worked at least forty hours, plus an equal amount of liquidated damages.   *Id.*

In sum, the parties agree that there is substantial risk for both sides in proceeding with this litigation, and they agree that the settlement reflects a reasonable compromise as to Plaintiffs' damages claims.   *Id.* at 13.   The parties "desire to resolve this case by way of a negotiated settlement payment by Defendants to avoid the time and expense inherent in continued litigation and the possibility of scores of individual trials."   *Id.* at 14.

Class counsel individually contacted each member of the settlement collective, either verbally or by written correspondence, or both. *Id.* at 11–12. *See also* Doc. No. 11-2, at 4–5 ¶¶ 9–13 & at 7–143. Class counsel received no objections from any person regarding the terms of the settlement. Doc. No. 111, at 12. *See also* Doc. No. 111-2, at 4–5 ¶¶ 9–13.

Because the parties' representations adequately explain the settlement process and the reasons for the compromise of Plaintiffs' FLSA claims, the undersigned recommends that the Court find the amount of the compromise reasonable. *See Bonetti*, 715 F. Supp. 2d at 1227 ("If the parties are represented by competent counsel in an adversary context, the settlement they reach will, almost by definition, be reasonable.").

> D.   *Attorneys' Fees and Costs.*

Because Plaintiffs have compromised their FLSA claims, the Court must also consider whether the payment to their attorneys is reasonable to ensure that the attorneys' fees and costs to be paid did not improperly influence the amount Plaintiffs agreed to accept in settlement. *See Silva*, 307 F. App'x at 351. Pursuant to the Settlement Agreement, class counsel will receive a total of $281,991.70 in attorneys' fees and costs. *See* Doc. No. 111-1 ¶¶ 3.6, 4.2 & at 16.[3] The Settlement Agreement further states that:

---

[3] There is a minor discrepancy in the settlement agreement, with one paragraph

> The Parties acknowledge that fees and costs to Class Counsel were separately negotiated without affecting the amounts to the Plaintiffs that were agreed upon.   Class Counsel and the Plaintiffs agree that the attorneys' fees and expenses are a fair and reasonable amount and were necessary for the prosecution of this action.   Defendants do not oppose Class Counsel's recover of these fees or expenses and do not object tot the reasonableness of Plaintiffs' fees and expenses, or that they were fair, reasonable, and necessary for the prosecution of this action.

*Id.* ¶ 3.6.   In the joint motion, the parties reiterate that the fees were negotiated separately after the amounts to be paid to the collective were agreed upon, and that the fees and costs "do not impact and were negotiated without regard to the amounts paid to Plaintiffs."   Doc. No. 111, at 9.

Based on these representations, there is no reason to believe that the amount Plaintiffs agreed to accept was adversely affected by the amount of fees paid to their counsel.   *See Bonetti*, 715 F. Supp. 2d at 1228 (finding that when attorney's fee issue is "addressed independently and seriatim, there is no reason to assume that the lawyer's fee has influenced the reasonableness of the plaintiff's settlement"). Therefore, the undersigned will recommend that the Court find that the amount of attorneys' fees to be paid under the settlement does not taint the amount Plaintiffs agreed to accept to settle their FLSA claims.

---

stating that counsel will receive a total of $281,992.00 in fees and costs ($262,737.00 in fees and $19,255.00 in costs), with another stating that counsel will receive a total of $281,991.70 in fees and costs (two installments of $140,995.85 each).   *See* Doc. No. 111-1 ¶¶ 3.6, 4.2. This $0.30 discrepancy does not materially affect the analysis set forth herein.

E.      *Other Terms of the Settlement Agreement.*[4]

Upon review, the Settlement Agreement does not include any problematic non-cash concessions that courts have found to undermine the fairness of an FLSA settlement.    Doc. No. 111-1.    Still, the Court must consider whether the release of claims in the Settlement Agreement renders it unfair.   *See generally Bright v. Mental Health Res. Ctr., Inc.*, No. 3:10-cv-427-J-37TEM, 2012 WL 868804, at *4 (M.D. Fla. Mar. 14, 2012) ("Pervasive, overly broad releases have no place in settlements of most FLSA claims.").   Here, the release states as follows:

> Upon the Court's approval of this Agreement and entry of the Order of Dismissal and payment of all monetary amounts due under this Agreement, the Settlement Collective shall voluntarily and fully release the Defendants from all wage claims resulting from the practices complained of in the Lawsuit pursuant to the FLSA or any similar state or local law relating to their employment with the Defendants.

Doc. No. 111-1 ¶ 6.1.[5]

---

[4] On November 28, 2023, the undersigned required the parties to notify the Court whether they entered into any other agreement in any way related to this action or otherwise containing a release extending beyond the FLSA claims in this action, containing a confidentiality provision, or containing a non-disparagement provision.   Doc. No. 112. The parties have responded that they have not entered into any other agreements besides that submitted with their joint motion.   Doc. No. 114.   *See* Doc. No. 111-1.

[5] The settlement agreement has been executed by Defendants and the named Plaintiff (Mary Fixl) alone.   Doc. No. 111-1, at 14.   However, the Notification to Potential Class Members (Doc. No. 29-5), which was approved by the Court (Doc. No. 44, at 5) states that "[t]he decisions and agreements made and entered into by the Representative Plaintiff will be binding on you if you join this lawsuit."   Doc. No. 29-5, at 4.   And the "Consent to Become Party Plaintiff" forms further provide that the named Plaintiff (Mary Fixl) has been designated as the signatory's agent for all matters pertaining to this lawsuit.   *See id.*

Because the release is tailored to the wage claims raised in the complaint and those reasonably related thereto, the release does not undermine the fairness of the settlement.  *See, e.g.*, *Huff*, 2021 WL 268356, at *4, *report and recommendation adopted*, 2021 WL 268355 (M.D. Fla. Jan. 27, 2021) (approving release of all wage claims against the defendants related to the operative complaint);[6] *Plazas v. Dr. Phillips Ctr. for Performing Arts, Inc.*, No. 6:18-cv-392-Orl-37TBS, 2018 WL 3432739, at *3 (M.D. Fla. June 29, 2018), *report and recommendation adopted*, 2018 WL 3428155 (M.D. Fla. July 16, 2018) (approving release of "all unpaid wage claims under the Fair Labor Standards Act (the "FLSA"), or any similar state or local law").

Accordingly, the undersigned recommends that the Court find that the release does not affect the reasonableness of the Settlement Agreement.

F.  *Retention of Jurisdiction.*

The parties request that the Court dismiss this case with prejudice as to the sixty-nine-member settlement collective, dismiss the case without prejudice as to the nine remaining opt-ins who are no longer part of the collective (James Allen, Dariel Davila, Brandon Eavey, Tammy Fisk, Douglas Irwin, Frank Pasta, Luis Perez

---

at 5.

[6]   In *Huff*, although only FLSA claims were pleaded in the complaint, the release in the settlement agreement extended to claims arising under local, state, or federal law relating to the plaintiffs' employment.   No. 6:19-cv-861-Orl-37DCI, Doc. Nos. 1, 108; *see also id.*, Doc. No. 108-1, at 14 (extension of release to both FLSA claims and those arising under local, state, or federal law relating to the plaintiffs' employment).

Rentas, Darryl Tompkins, and Hector Torres), and retain jurisdiction over their Settlement Agreement "for the purposes of interpretation, compliance, and enforcement of the Agreement."   Doc. No. 111, at 23.   *See also* Doc. No. 111-1 ¶ 8.1.

Generally, Courts in this District decline to retain jurisdiction to enforce the terms of an FLSA settlement agreement.   *See, e.g.*, *DeGraff v. SMA Behavioral Health Servs., Inc.*, 945 F. Supp. 2d 1324, 1330-31 (M.D. Fla. 2013); *Schisler v. Sam's West, Inc.*, No. 6:15-cv-517-Orl-22KRS, 2016 WL 2866216, at *3 (M.D. Fla. Apr. 29, 2016), *report and recommendation adopted*, 2016 WL 2854273 (M.D. Fla. May 16, 2016).   Here, the parties do not explain why retention of jurisdiction would be necessary or appropriate, nor do they cite any legal authority supporting the request.   Doc. No. 111, at 23.   Accordingly, the undersigned will recommend that the Court decline to retain jurisdiction over the Settlement Agreement.   *See, e.g.*, *Huff*, 2021 WL 268356, at *5 (recommending denial of FLSA collective settlement approval motion to the extent that it requested retention of jurisdiction to enforce the agreement, "as the Motion fail[ed] to support that request with a memorandum of legal authority or any compelling argument."), *report and recommendation adopted*, 2021 WL 268355 (M.D. Fla. Jan. 27, 2021); *Williams v. Coventry Health Care of Fla., Inc.*, No. 6:16-cv-731-Orl-41TBS, 2017 WL 8315922, at *8 (M.D. Fla. Oct. 16, 2017) ("Absent justification for the Court to retain jurisdiction here, I do not recommend it."), *report and recommendation adopted*, 2018 WL 1466395 (M.D. Fla. Mar. 26, 2018); *James v. Sanford*

*Auto Dealer Exch., Inc.*, No. 6:08-cv-103-Orl-28KRS, 2008 WL 4773186, at *2 (M.D. Fla. Oct. 30, 2008) (declining to retain jurisdiction to enforce FLSA collective action settlement).

**IV.   CONCLUSION.**

Based on the foregoing, the undersigned **RESPECTFULLY RECOMMENDS** that the Court:

**1.    GRANT in part** the Joint Motion to Approve Settlement (Doc. No. 111);

**2.    FIND** that the Settlement Agreement (Doc. No. 111-1) is a fair and reasonable resolution of a bona fide dispute under the FLSA;

**3.    DISMISS** this case **with prejudice** with respect to the sixty-nine (69) members of the settlement collective.

**4.    DISMISS** this case **without prejudice** with respect to the following individuals:

a. James Allen

b. Dariel Davila

c. Brandon Eavey

d. Tammy Fisk

e. Douglas Irwin

f. Frank Pasta

g. Luis Perez Rentas

h. Darryl Tompkins

i. Hector Torres

**5.**    **DENY** the motion (Doc. No. 111) to the extent that it requests that the

Court retain jurisdiction to enforce the Settlement Agreement or for any other

purpose.

## <u>NOTICE TO PARTIES</u>

A party has fourteen days from the date the Report and Recommendation is

served to serve and file written objections to the Report and Recommendation's

factual findings and legal conclusions.   Failure to serve written objections waives

that party's right to challenge on appeal any unobjected-to factual finding or legal

conclusion the district judge adopts from the Report and Recommendation.   11th

Cir. R. 3-1.

Recommended in Orlando, Florida on January 8, 2024.

_____
LESLIE HOFFMAN PRICE
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy